**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| THOMAS W. TRAMAGLINI, <br><br> Plaintiff, <br><br> v. <br><br> PATROLMAN JONATHAN C. MARTIN *et al.*, <br><br> Defendants. | Civ. No. 19-11915 <br><br> **OPINION** |

THOMPSON, U.S.D.J.

# INTRODUCTION

This matter comes before the Court upon the Motion to Dismiss brought by Defendants Jonathan C. Martin, John Mioduszewski, and Holmdel Township ("Township Defendant") (collectively, "Defendants"). (ECF No. 5.) Plaintiff Thomas W. Tramaglini ("Plaintiff") opposes. (ECF No. 11.) The Court has decided the Motion based on the parties' written submissions and without oral argument, pursuant to Local Civil Rule 78.1(b). For the reasons stated herein, the Motion is granted.

# BACKGROUND

This action arises from the allegedly unlawful taking, and subsequent dissemination, of a mugshot photograph. (*See* Compl. ¶ 1, ECF No. 1.) Right before dawn on May 1, 2018, Plaintiff was exercising at the Holmdel High School Athletic Complex. (*Id.* ¶¶ 24–25.) At around 5:50 AM, Defendant Martin, a police officer assigned as the School Resource Officer for Holmdel Township High School, approached Plaintiff. (*Id.* ¶¶ 16, 24–25; Arrest Report at 1, ECF No. 5-1.) The Complaint does not detail their conversation or why Defendant Martin

1

approached Plaintiff, but Defendant Martin eventually requested that Plaintiff meet him at the Holmdel Township Police Department; Plaintiff complied and drove his personal vehicle to the station. (Compl. ¶¶ 25–27.)

Though the Complaint does not provide any more detail regarding what transpired on that day, a subsequent court transcript, a public document permitted for purposes of this Motion, *see Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007) (finding no error where district court referred to court transcript while resolving motion to dismiss), reveals a little more. Preceding the May 1 incident, on several occasions, staff at the Holmdel High School had found feces in various locations around the track and football field. (Sentencing Tr. 16, *New Jersey v. Tramaglini*, N.J. Summons No. SC-2018-014654 (Holmdel Mun. Ct. Oct. 24, 2018), Ex. A, ECF No. 14-1.) Defendant Martin, as a result, had commenced an investigation and set up surveillance. (*Id.* at 16–17.) At about 5:30 AM on May 1, after finding fresh feces under the bleachers near the track, Defendant Martin confronted Plaintiff, who was running around the track at the time. (*Id.* at 17–18.) Plaintiff immediately apologized and explained that he had "experience[d] the immediate and emergent need to defecate" while running and did so under the bleachers. (*Id.* at 5 (Plaintiff's allocution).)

Plaintiff was ultimately charged with three municipal offenses: (1) public urination/defecation, (2) littering, and (3) lewdness. (Compl. ¶¶ 28, 44–45; Arrest Report at 2.) Plaintiff was assigned Holmdel Township Police Department ID Booking Arrest No. 008978 and photographed by Defendant Martin (the "Mug Shot"). (Compl. ¶¶ 30–33.) He was "not arrested" so, presumably, he was allowed to go home after these booking measures were taken. (*See id.* ¶¶ 39, 42.) Plaintiff eventually pleaded guilty to public defecation and paid a $500 fine;

2

the remaining charges were dropped pursuant to a plea agreement. (*Id.* ¶¶ 46–47; Holmdel Mun. Ct. Dkt., ECF No. 5-1.)

The next day or so, on May 2 or 3, 2018, media outlets "around the world" began reporting on Plaintiff's public defecation charge and disseminating the associated Mug Shot. (Compl. ¶¶ 34–38.) Plaintiff accuses Defendant Martin, the arresting officer, and Defendant Mioduszewski, chief of Holmdel Township Police Department, of unlawfully disseminating the Mug Shot. (*Id.* ¶¶ 17, 63, 68, 129, 133.) Plaintiff alleges that media outlets sensationalized, and even falsely reported about, his charges. (*Id.* ¶¶ 40–42.) Plaintiff surmises that this media coverage was fueled by the Mug Shot. (*See id.* ¶ 43.) As a result of the negative and embarrassing media coverage, Plaintiff, a superintendent at a different school district at the time, was forced to resign from his position. (*See id.* ¶¶ 15, 48–51.)

Plaintiff filed this action on April 30, 2019. (*Id.* ¶ 1.) The suit primarily centers on the allegedly unlawful taking, and dissemination, of the Mug Shot and the damage that resulted from it. Specifically, Plaintiff alleges eight counts: (1) violations of the Fourth, Fifth, and Sixth Amendments via 42 U.S.C. § 1983 against Defendants Martin and Mioduszewski (Compl. ¶¶ 54–77); (2) deliberately indifferent policies, practices, customs, training, and supervision in violation of the Fourth, Fifth, and Sixth Amendments via § 1983 against Township Defendant (Compl. ¶¶ 78–98); (3) negligent infliction of emotional distress against all Defendants (*id.* ¶¶ 99–107); (4) intentional infliction of emotional distress against all Defendants (*id.* ¶¶ 108–16); (5) negligent hiring, retention, training, and supervision against Defendant Mioduszewski and Township Defendant (*id.* ¶¶ 117–22); (6) defamation against all Defendants (*id.* ¶¶ 123–27); (7) false light and/or invasion of privacy against all Defendants (*id.* ¶¶ 128–31); and (8) intrusion of seclusion against all Defendants (*id.* ¶¶ 132–35).

3

On June 21, 2019, Defendants filed the instant Motion to Dismiss. (ECF No. 5.) They primarily argue that Plaintiff alleges only violations of *state* law and thus fails to state a claim for any *federal* constitutional violation. (*See* Defs.' Br. at 2–3, ECF No. 5-2.) Defendants ask for dismissal of the only two federal § 1983 claims and, consequently, urge the Court to decline exercising supplemental jurisdiction over the remaining state-law claims. (*Id.* at 18.) After two extensions (ECF Nos. 6, 9), Plaintiff opposed the Motion on August 13, 2019 (ECF No. 11). Defendants replied on August 23, 2019. (ECF No. 14.) The Motion to Dismiss is currently before the Court.

## **LEGAL STANDARD**

To survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). When considering a Rule 12(b)(6) motion, a district court should conduct a three-part analysis. *Cf. Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, the court must accept as true all well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009); *see also Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786–87 (3d Cir. 2016). However, the court may disregard any conclusory legal allegations. *Fowler*, 578 F.3d at 203. Finally, the court must determine whether the "facts are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). A complaint which does not demonstrate more than a "mere possibility of misconduct" must be dismissed. *See Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187,

190 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

## **DISCUSSION**

As a preliminary matter, Count I and II allege that Defendants violated the Fourth, Fifth, and Sixth Amendments of the Constitution. (Compl. ¶¶ 59–61, 78–98.) However, the sparse allegations in these counts lack any facts even suggesting that a Fourth or Sixth Amendment violation occurred. Plaintiff fails to allege that he was seized unlawfully or that he was deprived of an attorney; on the contrary, Plaintiff drove himself to the police station and was represented by counsel during his proceedings. (*See id.* ¶ 27; Holmdel Mun. Ct. Dkt. (indicating attorney's appearance).) And save for one reference in his brief (*see* Pl.'s Br. at 7, ECF No. 11), Plaintiff does not advance any argument in support of this kind of constitutional violation. The Court is unable to, even interpreting the facts in the light most favorable to Plaintiff, deduce a Fourth or Sixth Amendment violation. Accordingly, the Court focuses only on Plaintiff's allegations that Defendants contravened the Fifth or—as the Court construes for purposes of this Motion—the Fourteenth Amendment.

### **I.      Individual Liability under § 1983 (Count I)**

Plaintiff's constitutional claim arises under § 1983, which provides a civil remedy for the "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. "To state a claim [for individual liability] under section 1983, a plaintiff must demonstrate that 'some person has deprived him of a *federal* right . . . [and] that the person who has deprived him of that right acted under color of state or territorial law.'" *Halsey v. Pfeiffer*, 750 F.3d 273, 290 (3d Cir. 2014) (emphasis added) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). "Thus, to state a claim under § 1983, [the plaintiff] must indicate: (1) of what constitutional or federal right he was deprived, and (2) how he was deprived of that right under

5

color of state law." *Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety-Division of State Police*, 411 F.3d 427, 433 (3d Cir. 2005).

      A.     *State-Law Violations*

Defendants primarily argue that the source of Plaintiff's constitutional claim—an alleged violation of state law—cannot form the basis of a federal § 1983 claim. (Defs.' Br. at 9.) Indeed, Plaintiff alleges two state-law violations in the Complaint in support of his federal constitutional claim:

> Plaintiff had a clearly established right pursuant to N.J.S.A. [§] 53:1-15 and New Jersey case law not to have [the Mug Shot] taken for alleged violations of non-criminal Holmdel Municipal Ordinances. . . . [and] pursuant to New Jersey Executive Order No. 69 (May 15, 1997) not to have [the Mug Shot] disseminated and distributed to the public domain.

(Compl. ¶¶ 62–63; *see also* Pl.'s Br. at 10–13 (arguing that Defendants unlawfully took and distributed the Mug Shot pursuant to state law).) N.J.S.A. § 53:1-15 provides that "law enforcement agencies and officers shall, immediately upon the arrest of any person for an indictable offense . . . or [upon] the conviction of any person charged with a nonindictable offense . . . take the fingerprints of such person"; N.J. Executive Order No. 69 (May 15, 1997), 29 N.J.R. 2729(a), directs that "photographs and similar criminal investigation records," among other things, "shall not be deemed to be public records."

By contending that Defendants unlawfully took and distributed the Mug Shot pursuant to these two New Jersey laws in support of his § 1983 claim (*see* Pl.'s Br. at 10–13), Plaintiff seems to conflate a state law violation with a federal constitutional violation. "New Jersey law, however, is not determinative of the scope of the constitutional right of privacy." *Nunez v. Pachman*, 578 F.3d 228, 233 (3d Cir. 2009). Though these two bodies of law may overlap, they do not do so necessarily.

6

> Substantive due process rights are founded not upon state law but upon deeply rooted notions of fundamental personal interests derived from the Constitution. While state statutes and regulations may inform our judgement regarding the scope of constitutional rights, they fall far short of the kind of proof necessary to establish a reasonable expectation of privacy. Mere allegations that an official failed to abide by state law will not suffice to state a constitutional claim. The disclosed information itself must warrant constitutional protection.

*Id.* (internal citation marks omitted) (quoting *Nilson v. Layton City*, 45 F.3d 369, 372 (10th Cir. 1995)); *see also Scheetz v. Morning Call, Inc.*, 946 F.2d 202, 206 (3d Cir. 1991) ("[T]he question of whether a federal constitutional right to privacy has been violated is a distinct question from whether a . . . state common law right to privacy has been violated. . . . [C]ase law cited by the parties as to [state] confidentiality law cannot control the *federal* constitutional right." (emphasis in original) (internal citations omitted)). It is therefore of no moment, for purposes of this claim, whether Defendants violated N.J.S.A. § 53:1-15 or N.J. Executive Order No. 69.

      B.     *Substantive Due Process*

Though Defendants essentially interpret the Complaint as alleging only these state-law violations, Plaintiff also pleads that Defendants violated his substantive due process rights protected by the Fourteenth Amendment. (*See* Compl. ¶ 60 (alleging right not to be deprived of life, liberty, or property without due process of law).) "[T]he touchstone of due process is protection of the individual against arbitrary action of government, whether the fault lies in a denial of fundamental procedural fairness or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845–46 (1998) (internal citations omitted). To establish a substantive due process claim, a plaintiff must prove that (1) "the particular interest at issue is protected by the substantive due process clause," and (2) "the government's deprivation of that protected interest shocks the conscience." *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008)

1. Particular Interest at Issue

Although Plaintiff explicitly contends that the particular interest at issue in this case is a property interest in his job and occupational license (*see* Pl.'s Br. at 14–15), Plaintiff also relies on certain case law implicitly suggesting instead that a privacy interest is at issue (*see id.* at 15–18). The Court therefore addresses whether Plaintiff states a cognizable constitutional claim under either interest.

*i.     Property Interest*

"[N]ot all property interests worthy of procedural due process protection are [also] protected by the concept of substantive due process." *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 139–40 (3d Cir. 2000) (quoting *Reich v. Beharry*, 883 F.2d 239, 243 (3d Cir. 1989)). "Rather, to state a substantive due process claim, 'a plaintiff must have been deprived of a particular quality of property interest.'" *Id.* (quoting *DeBlasio v. Zoning Bd. of Adjustment*, 53 F.3d 592, 598 (3d Cir. 1995)). "To have a property interest in a job . . . a person must have more than a unilateral expectation of continued employment; rather, she must have a legitimate entitlement to such continued employment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006).

> The decisional law is clear that an at-will employee does not have a legitimate entitlement to continued employment because she serves solely at the pleasure of her employer. *Chabal v. Reagan*, 841 F.2d 1216, 1223 (3d Cir. 1988). Therefore, once a court determines that a public employee "held [her] position at the will and pleasure of the [governmental entity]," such a finding "necessarily establishes that [the employee] had no property interest" in the job sufficient to trigger due process concerns. *Bishop v. Wood*, 426 U.S. 341, 346 n.8 (1976).

*Elmore v. Cleary*, 399 F.3d 279, 282 (3d Cir. 2005).

Plaintiff advances two harms suffered here. He alleges that he "was forced to step down from his position as the Superintendent of the Kenilworth Public Schools . . . due to the negative media attention his case received as a direct consequence of [Defendants'] unlawful conduct."

8

(Compl. ¶ 50.) Plaintiff also alleges in his papers, though not in the Complaint, that he now "face[s] the loss of his occupational license." (Pl.'s Br. at 14.)

However, neither interest is sufficient to state a claim for a substantive due process violation. First, even ignoring the fact that Plaintiff did not allege in the Complaint that he "face[s] the loss of his occupational license," Plaintiff does not allege that he has *already lost* his occupational license. Such hypothetical harms cannot be addressed by this Court. *See Kamal v. J. Crew Grp., Inc.*, 918 F.3d 102, 110 (3d Cir. 2019) (reiterating that "a plaintiff must allege 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical'" (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016))). But more importantly, the Third Circuit has held that even a tenured professorship at a state university—quite a far cry from a non-tenured superintendent—is not afforded constitutional protection under substantive due process. *See Nicholas*, 227 F.3d at 142–43 (explaining that "tenured public employment is a wholly state-created contract right; it bears little resemblance to other rights and property interests that have been deemed fundamental under the Constitution").

The case law upon which Plaintiff relies is wholly inapposite. In *Kane v. Barger*, 902 F.3d 185, 188 (3d Cir. 2018), the plaintiff alleged that a police officer "violated her Fourteenth Amendment right to bodily integrity by—in the course of purportedly interviewing her about her alleged sexual assault—touching her and using his personal cell phone to photograph her intimate areas"; in *United States v. Guidry*, 456 F.3d 493, 507 (5th Cir. 2006), the court found sufficient evidence to support an officer's violation of the substantive right to bodily integrity where he sexually assaulted women-arrestees at the police station by "essentially barter[ing] for the women's freedom" with sexual favors; and in *York v. Story*, 324 F.2d 450, 454–55 (9th Cir.

1963), the court concluded that the plaintiff stated a claim under the substantive right to privacy where police officers took and distributed photographs of plaintiff in the nude, emphasizing that "[w]e cannot conceive of a more basic subject of privacy than the naked body." The instant facts pale in comparison to these wickedly salacious examples and thus fail to persuade the Court of their utility here.[1] Because a "federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily," *Nicholas*, 227 F.3d at 143 (quoting *Bishop*, 426 U.S. at 359–60), Plaintiff fails to state a cognizable claim for deprivation of a property interest in his job pursuant to the Fourteenth Amendment.

## ii. Privacy Interest

Though the "Constitution does not mention an explicit right to privacy," the Supreme Court has "found certain 'zones of privacy' in the amendments to the Constitution," such as the constitutional right of privacy rooted within the Due Process Clause's concept of personal liberty. *Whalen v. Roe*, 429 U.S. 589, 598 n.23 (1977); *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 178 (3d Cir. 2005). And within that right is comprised "the individual interest in avoiding disclosure of personal matters." *Whalen*, 429 U.S. at 599.

"[T]he right not to have intimate facts concerning one's life disclosed without one's consent. . . . is a venerable one whose constitutional significance we have recognized in the past." *Bartnicki v. Vopper*, 200 F.3d 109, 122 (3d Cir. 1999).

> The touchstone of constitutional privacy protection is whether the information at issue is "within an individual's reasonable expectations of confidentiality." The

---

[1] The other string citation of case law, by Plaintiff's own explanatory parentheticals, fail to adequately compare to the facts at issue here. (*See, e.g.*, Pl.'s Br. at 16–17 (citing case law where officer "pursu[ed] a non-fleeing summary traffic offender at high speeds," where officer "left an intoxicated pedestrian alone to walk home on a cold night," where officer "brandishe[d] his gun 18 inches from person's head with his wife present and threaten[ed] to shoot," and where officer "strip search[ed]" a prisoner).)

10

> more intimate or personal the information, the more reasonable the expectation is that it will remain confidential. Indeed, the "federal constitution . . . protects against public disclosure [of] only highly personal matters representing the most intimate aspects of human affairs," thereby shielding from public scrutiny "only that information which involves deeply rooted notions of fundamental personal interests derived from the Constitution."

*Doe v. Luzerne Cty.*, 660 F.3d 169, 175–76 (3d Cir. 2011) (internal citations omitted). Courts should consider:

> the type of record requested, the information it does or might contain, the potential for harm in any subsequent nonconsensual disclosure, the injury from disclosure to the relationship in which the record was generated, the adequacy of safeguards to prevent unauthorized disclosure, the degree of need for access, and whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access.

*Ridgewood Bd. of Educ.*, 430 F.3d at 179–80 (3d Cir. 2005) (quoting *United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 578 (3d Cir. 1980)).

Plaintiff's alleged privacy interest here, concerning the Mug Shot, simply does not rise to the level of implicating the substantive right to privacy warranting constitutional protection under the Fourteenth Amendment. First, the disclosure of a mug shot itself does not reveal any information that was not already public. A mug shot merely provides a visual of someone with pending charges, and Plaintiff does not allege that his pending charges were nonpublic. Second, a mug shot is not based in text. Its disclosure, without anything more, is less likely to facilitate false or inaccurate reporting about the defendant or his pending charges. Third, a mug shot is not the type of "highly personal matter[] representing the most intimate aspects of human affairs" that historically has been protected by the Fourteenth Amendment. In contrast to the Mug Shot here, the Third Circuit has found the following types of information to be constitutionally protected: "a private employee's medical information that was sought by the government; medical, financial and behavioral information relevant to a police investigator; a public

11

employee's prescription record; a minor student's pregnancy status; sexual orientation; and an inmate's HIV-positive status." *Luzerne Cty.*, 660 F.3d at 176 (citing *Malleus v. George*, 641 F.3d 560, 564 (3d Cir. 2011) (collecting cases and explaining that information encompassed by the constitutional right to privacy may be separated into categories reflecting sexual, medical, and some financial information)). Unlike these examples, and the myriad cases cited herein, a mug shot does not exude a reasonable expectation of confidentiality.[2] Accordingly, Plaintiff fails to state a cognizable claim for deprivation of a privacy interest in the confidentiality of the Mug Shot pursuant to the Fourteenth Amendment.

2. Deprivation of Interest

Even if Plaintiff were entitled to a property interest in his job or a privacy interest in the confidentiality of the Mug Shot, Plaintiff's claim is confronted with a causation issue. "It is axiomatic that '[a] § 1983 action, like its state tort analogs, employs the principle of proximate

---

[2] *Cf. Atwater v. City of Lago Vista*, 532 U.S. 318, 355 (2001) (finding that plaintiff's "arrest and booking [which included a mug shot] were inconvenient and embarrassing to [plaintiff], but not so extraordinary as to violate the Fourth Amendment"); *Paul v. Davis*, 424 U.S. 693, 718 (1976) (refusing to recognize right to privacy in § 1983 claim where plaintiff's mugshot was publicized, even though plaintiff was "never convicted of any criminal activity and whose only 'offense' was having once been arrested"); *Jamali v. Cnty. of Maricopa*, 668 F. App'x 722, 723 (9th Cir. 2016) (finding dismissal appropriate where constitutional claim arose out of his mugshot); *Nunez*, 578 F.3d at 233 (affirming dismissal because the expunged criminal record that was exposed was publicly available); *Scheetz*, 946 F.2d at 207 (affirming dismissal and holding that "the information contained in a police report is not protected by the confidentiality branch of the constitutional right of privacy" because, in part, "the information would have wound up on the public record"); *DePiano v. Atl. Cty.*, 2006 U.S. Dist. LEXIS 27434, at *16–22 (D.N.J. Apr. 25, 2006) (holding, after bench trial, that plaintiff failed to prove a violation of his privacy rights where photographs of the male plaintiff dressed in female clothing were distributed); *Sorrentino v. City of Phila.*, 1997 U.S. Dist. LEXIS 14564, at *18 (E.D. Pa. Sept. 16, 1997) (explaining that "[i]nformation relating to an individual's criminal convictions or criminal charges . . . is not confidential information subject to constitutional protection" and deducing that "an individual's mug shot photo is a matter of public record not subject to constitutional protection").

causation.'" *Hedges v. Musco*, 204 F.3d 109, 121 (3d Cir. 2000) (quoting *Townes v. City of New York*, 176 F.3d 138, 146 (2d Cir. 1999)).

> The concept of "proximate cause" has traditionally been defined "as a person's wrongful conduct which is a substantial factor in bringing about harm to another." However, "an intervening act of a third party, which actively operates to produce harm after the first person's wrongful act has been committed, is a superseding cause which prevents the first person from being liable for the harm which his antecedent wrongful act was a substantial factor in bringing about."

*Barr v. Cty. of Clarion*, 417 F. App'x 178, 181 (3d Cir. 2011) (citing *Egervary v. Young*, 366 F.3d 238, 246 (3d Cir. 2004); Restatement (Second) of Torts §§ 431, 440–41).

Plaintiff fails to address any connection between the alleged distribution of the Mug Shot and the alleged injury suffered, his termination. The sensational media coverage he received seems to have stemmed from the evocative nature of Plaintiff's public defecation charge—a charge to which he eventually pleaded guilty—coupled with the fact that Plaintiff was a superintendent at a different school district. Plaintiff alleges that the "Mug Shot gave traction to inaccurate media accounts" (Compl. ¶ 49), but Plaintiff admits that "Plaintiff was forced to step down from his position . . . *due to the negative media attention his case received*" (*id.* ¶ 50 (emphasis added)). It is not clear how the Mug Shot—a simple neck-up photograph—plausibly could have caused any inaccurate reporting, and Plaintiff does not allege that Defendants publicly distributed any inaccurate information. Simply put, it can hardly be argued that but for the distribution of the Mug Shot—the only constitutionally deficient behavior alleged—the sensational media coverage and Plaintiff's termination would not have transpired. Moreover, other than pointing a finger at Defendant Martin, who took the Mug Shot, Plaintiff does not allege when Defendant Martin disseminated the Mug Shot, to whom he distributed it, or the method by which he did so. The Complaint's chief factual allegations regarding "inaccurate

13

media accounts" and "negative media attention" seem to be concentrated on, and better addressed by, Plaintiff's state-law tort claims, which include defamation and invasion of privacy, more so than any federal constitutional violation.[3]

## II. Municipal Liability under § 1983 (Count II)

To hold a municipality liable under § 1983, a plaintiff must show that either (1) the constitutional violations of government employees were the result of a policy or custom of the municipality for whom the employee works, *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978)); or alternatively, (2) the municipality failed to adequately train or supervise the employees that ultimately violated the constitution, *Padilla v. Twp. of Cherry Hill*, 110 F. App'x 272, 278–79 (3d Cir. 2004). "It is well-established that there is no general municipal *respondeat superior* liability under 42 U.S.C. § 1983." *Ali v. Rando*, 2011 U.S. Dist. LEXIS 109618, at *26 (D.N.J. Sept. 26, 2011) (citing *McMillian v. Monroe Cty.*, 520 U.S. 781, 784 (1997); *Monell*, 436 U.S. at 691). Rather, liability "must be founded upon evidence that the government unit itself supported a violation of constitutional rights." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990).

Where a claim is based on a policy or custom, a "plaintiff must identify the challenged policy, attribute it to the [municipality] itself, and show a causal link between execution of the policy and the injury suffered." *Harley v. N.J. City*, 2017 U.S. Dist. LEXIS 98808, at *20–21 (D.N.J. June 27, 2017) (quoting *Kranson v. Valley Crest Nursing Home*, 755 F.2d 46, 51 (3d Cir.

---

[3] Separately, "[d]eprivation violates due process only when it 'shocks the conscience,' which encompasses 'only the most egregious official conduct.'" *Chainey*, 523 F.3d at 219 (quoting *UA Theatre Circuit v. Twp. of Warrington*, 316 F.3d 392, 400 (3d Cir. 2003)). The Court is skeptical as to whether Defendants' alleged conduct clears this high hurdle, but it need not analyze this issue.

1985)).  The plaintiff must point to some "given course of conduct, although not specifically endorsed or authorized by law, [that] is so well-settled and permanent as virtually to constitute law." *Bielevicz*, 915 F.2d at 850 (citing *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)); *Watson v. Abington Twp.*, 478 F.3d 144, 155 (3d Cir. 2007).  "[P]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional [government] policy, which policy can be attributed to a . . . policymaker." *Wood v. Williams*, 568 F. App'x 100, 105-06 (3d Cir. 2014) (citing *Okla. City v. Tuttle*, 471 U.S. 808, 823–24 (1985)).

Where a claim is based on a failure to train or supervise, a plaintiff must demonstrate both "deliberate indifference to the rights of persons with whom those employees will come into contact" as well as a "causal nexus" between the failure to train and the constitutional injury. *Thomas*, 749 F.3d at 222 (internal quotations omitted) (citing *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999); *City of Canton v. Harris*, 489 U.S. 378, 391 (1989)).  A finding of deliberate indifference necessitates that the constitutional violation be a "highly predictable consequence" of the failure to train, which arises where a pattern of similar violations has occurred in the past or where the need for training is "obvious." *Id.* at 223, 225 (citing *Connick v. Thompson*, 563 U.S. 51, 62, 64 (2011); *Canton*, 489 U.S. at 390 n.10).  "This requires a showing of the policymakers' 'continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees.'" *Robinson v. Fair Acres Geriatric Ctr.*, 722 F. App'x 194, 199 (3d Cir. 2018) (quoting *Bd. of the Cty. Comm'rs v. Brown*, 520 U.S. 397, 407 (1997)).

Here, the Complaint alleges that "[a] deprivation of a federal right occurred as a result of a policy" and that Defendants "developed and maintained policies, procedures, customs, and/or practices exhibiting deliberate indifference to the Constitutional rights of citizens, which were moving forces behind and proximately caused the violations of Plaintiff's Constitutional and federal rights." (Compl. ¶¶ 82–83, 90–91.) It further alleges that Defendants have "created and tolerated an atmosphere of lawlessness and have developed and maintained long-standing, department-wide customs, law enforcement related policies, procedures, customs, practices, and/or failed to properly train and/or supervise its officers in a manner amounting to deliberate indifference to the Constitutional rights of Plaintiff and of the public." (*Id.* ¶ 92.) Plaintiff also refers to "[t]he deliberately indifferent training and supervision provided by [Defendants] resulted from a conscious or deliberate choice to follow a course of action from various alternatives available to [Defendants]." (*Id.* ¶ 94.)

Rather than including "plain and clear allegations . . . establish[ing] municipal liability" (Pl.'s Br. at 20), however, the majority of the allegations amount to nothing more than boilerplate language tracking the rudimentary elements of a *Monell* claim. "[T]o state a viable claim in this context, [Plaintiff] must not only identify a municipal custom or policy that caused [his] injury, but also 'specify what exactly that custom or policy was.'" *Estate of Fabics v. City of New Brunswick*, 674 F. App'x 206, 210 (3d Cir. 2016) (quoting *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009)). Plaintiff does not describe an official custom or policy that violates the law, nor does he allege a proper causal link between any custom or policy of Defendants and the alleged injury. The Court declines to entertain the numerous inferential leaps necessary to deduce a particular custom or policy as "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the

16

incident includes proof that it was caused by an existing . . . municipal policy, which policy can be attributed to a municipal policymaker." *Brown v. Pittsburgh*, 586 F.3d 263, 292 (3d Cir. 2009) (quoting *Okla. City v. Tuttle*, 471 U.S. 808, 823–24 (1985)). That specificity is absent here. *Cf. McTernan v. City of York*, 564 F.3d 636, 657–59 (3d Cir. 2009) (affirming dismissal because the complaint "fail[ed] to specify the relevant 'custom' or 'policy' . . . . [and instead] simply paraphrase[d] § 1983").

And, separately, in the context of demonstrating deliberate indifference for purposes of failure to train, some kind of "pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' . . . . Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (internal citation omitted). The conclusory allegations in the Complaint lack the requisite specificity in order to state a cognizable *Monell* claim. Accordingly, Count II is dismissed.

## III. Supplemental Jurisdiction

Because the Court dismisses Counts I and II, only state-law claims remain. (*See* Compl. ¶¶ 99–135 (alleging Counts III–XIII: negligent infliction of emotions distress; intentional infliction of emotional distress; negligent hiring, retention, training, and supervision; defamation; false light and/or invasion of privacy; and intrusion of seclusion).) Although "a district court may decide state-law claims remaining after the dismissal of federal claims if 'considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so,'" Plaintiff has failed to identify any rationale counseling against dismissal. *Lopresti v. Cty. of Lehigh*, 572 F. App'x 133, 135 (3d Cir. 2014) (quoting *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 286 (3d Cir. 2006)); *see also* 28 U.S.C. § 1367(c)(3) (providing that a district

court "may decline to exercise supplemental jurisdiction" over state-law claims where it "has dismissed all claims over which it has original jurisdiction"). Indeed, the parties have not allocated many resources to this case as it has yet to surpass the motion-to-dismiss stage. Accordingly, the Court declines to exercise supplemental jurisdiction over the remaining state-law claims.

## IV. Leave to Amend

Plaintiff requests, in the alternative, that the Court grant him leave to cure any deficiencies found in the Complaint. Rule 15(a)(2) of the Federal Rules of Civil Procedure allows amendment of the pleadings with the court's leave. Because leave to amend should be freely given, *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000), Plaintiff is granted leave to file an amended complaint, in accordance with Local Civil Rule 15.1(b), to cure the deficiencies identified in regard to his § 1983 claims outlined in Counts I and II.

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss is granted. An appropriate Order will follow.

Date: September 9, 2019  */s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.